UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                     :
KIRT NICHOLAS,                                                       :        02 CV 6411 (ARR)
                              Petitioner,                            :
                                                                     :
      -against-                                                      :        OPINION AND ORDER
                                                                     :
SMITH, Superintendent,                                              :
                              Respondent.                            :
                                                                     :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

  Petitioner Kirt Nicholas filed the instant petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 on December 6, 2002. By order dated October 23, 2006, the court granted

petitioner leave to amend his petition. In his amended petition, Mr. Nicholas claims that: (1) his

guilty plea to both intentional murder and depraved indifference murder was not knowing,

voluntary and intelligent because he did not understand the elements of each offense; (2) his

appeal waiver was unconstitutional; (3) his trial counsel was ineffective for (a) failing to explain

the inconsistency of the two offenses, (b) allowing petitioner to waive his right to appeal, and (c)

failing to investigate and explain potential affirmative defenses; and (4) his sentence was

excessive. For the reasons stated below, the court denies the petition for a writ of habeas corpus.


## BACKGROUND

  On June 20, 1997, petitioner was indicted on two counts of murder in the second degree,

one count of intentional murder, pursuant to N.Y. P.L. § 125.25[1], and one count of depraved

indifference murder, pursuant to N.Y. P.L. § 125.25[2]. (See Ind. No. 6560/97 (Sup. Ct. Kings

Co. June 20, 1997).) Both counts charged petitioner with choking, strangling, and stabbing Maudlyn James, thereby inflicting injuries that caused her death. (Id.) Petitioner was not offered a plea bargain: the District Attorney's Office, after consulting with the victim's family, decided to "seek the maximum." (Plea Tr. at 3.)

On March 18, 1998, petitioner pled guilty to both counts of second-degree murder—the entire indictment—before New York Supreme Court Judge Leon Ruchelsman.[1] (Id. at 22.) At that proceeding, petitioner also waived his right to appeal. (Id. at 14-15.) On March 30, 1998, Judge Ruchelsman sentenced petitioner to twenty-five years to life imprisonment, the maximum sentence provided by statute, on each count of second degree murder and ordered that the two sentences be served concurrently. (Sentencing Tr. at 8.)

Petitioner appealed to the Appellate Division, Second Department. In a brief submitted by counsel, petitioner argued that his sentence was excessive and that his waiver of his right to appeal was not knowing and intelligent. Petitioner also filed a pro se supplemental brief contending that (1) his trial counsel was ineffective for failing to investigate an extreme emotional disturbance defense, (2) his plea was not knowing, voluntary and intelligent because (a) he was not advised of potential affirmative defenses and (b) he did not understood that he could be found guilty of and sentenced for only one count of second-degree murder after a trial; and (3) the appeal waiver should not preclude review of his ineffective assistance of counsel claim. By order dated May 30, 2000, the Appellate Division affirmed Mr. Nicholas' conviction and sentence, finding that (1) Mr. Nicholas knowingly and voluntarily waived his right to appeal;

---

[1] The transcript of the proceeding is dated May 18, 1998 but, based on the representations of the government and the date of sentencing, it appears that the proceeding actually took place on March 18, 1998.

(2) the appeal waiver precluded consideration of defendant's other claims, including ineffective assistance of counsel, except as it may have impacted the voluntariness of his plea; and (3) his plea was knowing, voluntary, and intelligent. People v. Nicholas, No. 1998-03439 (App. Div. 2d Dep't, May 30, 2000). The Court of Appeals, by order dated November 28, 2000, denied leave to appeal. People v. Nicholas, Ind. 6560/97 (N.Y. Nov. 8, 2000).

On August 7, 2001, petitioner filed a motion to vacate his judgment of conviction pursuant to § 440.10 of the New York Criminal Procedural Law in New York Supreme Court, Kings County. In that motion, petitioner asserted that his trial counsel was ineffective for failing to adequately advise him concerning his plea. Judge Ruchelsman denied petitioner's § 440.10 motion on October 29, 2001. See People v. Nicholas, Ind. No. 6560/97 (Sup. Ct. Kings. Co., Oct. 29, 2001.) Judge Ruchelsman determined that petitioner's allegations were unsubstantiated and contradicted by the record of the plea proceeding, in which petitioner "expressed knowledge and an understanding of the plea and a clear willingness to accept it." Id. On June 6, 2002, the Appellate Division, Second Department denied leave to appeal. People v. Nicholas, No. 202-423 (App. Div. 2d Dep't, June 6, 2002.)

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 26, 2002. By order dated May 29, 2003, the petition was stayed pursuant to Rhines v. Weber, 544 U.S. 269 (2005), so that Mr. Nicholas could exhaust additional ineffective assistance of counsel claims in state court.

On June 3, 2003, petitioner filed a second § 440.10 motion in the Supreme Court, Kings County. Petitioner argued that his conviction should be vacated because his trial counsel had been ineffective for failing to investigate the affirmative defense of extreme emotional

3

disturbance. By decision and order dated October 3, 2003, Judge Ruchelsman denied petitioner's motion, finding that the issues raised were already decided in previous motions and reiterating that the record of the plea reflected that petitioner was satisfied with the advice of his attorney and understood the plea and its consequences. People v. Nicholas, Ind. No. 6560/97 (Sup. Ct. Kings Co., Oct. 3, 2003). Thereafter, petitioner sought leave to appeal to the Appellate Division, which was denied by order dated August 19, 2004. People v. Nicholas, No. 2003-10548 (App. Div. 2d Dep't, Aug. 19, 2004). This court lifted the stay on August 25, 2006.

On May 18, 2006, the court granted petitioner's motion for appointment of counsel. By order dated October 23, 2006, the court granted petitioner's motion to amend his petition to add as a ground for relief that his guilty plea was not knowing, intelligent and voluntary. The court also granted petitioner's request to stay proceedings pending the New York Court of Appeals' response to questions certified by the U.S. Court of Appeals for the Second Circuit in Policano v. Herbert, 430 F.3d 82 (2d Cir. 2005), regarding the correct interpretation of New York law with respect to the elements of depraved indifference murder at the time of petitioner's conviction. Subsequent to that decision, petitioner and respondent filed supplemental papers relating to Mr. Nicholas' amended petition.

## DISCUSSION

I.  **AEDPA Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

4

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law, . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

## II.    Petitioner's Claims

### A.    *Validity of the Plea*

Petitioner claims that his guilty plea was not knowing, voluntary and intelligent because he did not receive adequate notice of the charges against him and did not admit to the facts necessary to establish his guilt of either offense. In particular, petitioner emphasizes that, under New York law, an individual cannot be convicted after trial of both intentional murder and depraved indifference murder for the death of a single victim because the mental states of the offenses are inconsistent. See People v. Gallagher, 69 N.Y.2d 525, 529 (N.Y. 1987) ("One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result—cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur.") Petitioner contends that his guilty plea was not voluntarily and intelligently made, because, when he pled guilty, he did not understand that he could only have been convicted on one of the charges if he had not waived his right to a jury trial. Moreover, petitioner argues that he did not—and, in fact, could not have—admitted facts at the plea allocution establishing that he possessed the requisite intent for both offenses.

In order to comply with the requirements of due process, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). A cornerstone of this requirement is that the defendant receive "real notice of the true nature of the charge against him." Smith v. O'Grady, 312 U.S. 329, 334 (1941). On this basis, the Supreme Court affirmed a grant of habeas relief to a petitioner who was not advised by trial counsel or the court that intent to cause the death of the

7

victim was an essential element of the second-degree murder charge to which he pled guilty. See Henderson v. Morgan, 426 U.S. 637, 647 (1976). The Supreme Court emphasized that "intent is such a critical element of the offense of second-degree murder that notice of that element is required." Id. at 647 n.18.

The court observes that the record of the plea allocution does not specifically reflect whether or not petitioner was given notice of and understood the intent elements of the two homicide offenses and their inconsistency. The indictment was not read at the proceeding and Judge Ruchelsman did not explain the charges to the petitioner at that time. There is also no representation by defense counsel that he explained the nature of the charges to his client. Cf. Henderson, 426 U.S. at 647 ("Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained the accused.") Mr. Nicholas admitted that he "killed [Maudlyn] James" by "[s]trangulation" and "placed [her body] in the ceiling" of her apartment. (Plea Tr. 10-11.) However, he did not admit to any further facts that would have assisted in establishing his intent at the time.

This absence of any reference to petitioner's understanding of the intent of the offenses to which he pled guilty is not, in and of itself, a fatal flaw. The Supreme Court explained in Henderson, that "it may be appropriate to presume in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Id. at 647. Moreover, it is generally appropriate to presume that a defendant is given adequate notice of the charges against him when the indictment was read at the arraignment or through discussions with counsel. See Marshall v. Lonberger, 459 U.S. 422, 437

8

(1983) ("respondent must be presumed to have been informed either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted"); Oppel v. Meachum, 851 F.2d 34, 38 (2d Cir. 1988).

Here, there is some support for the proposition that counsel informed petitioner of the charges he faced. In response to questions by Judge Ruchelsman at the plea allocution, petitioner indicated that he had discussed this case and the plea with his attorney. (Plea Tr. at 9.) Moreover, petitioner responded in the affirmative when asked by Judge Ruchelsman, "Did you understand the charge in the indictment and the meaning of what you are pleading to?"[2] (Id. at 15-16.) While petitioner never specifically stated that his attorney explained the elements of the charges to him, these representations would likely be sufficient in the majority of cases to enable a court to find the guilty plea to be knowing and voluntary based on the presumption that a criminal defendant received notice of the elements via the indictment and competent counsel. Given these representations and the general presumption that counsel or the indictment provided notice of the elements of the charges, the petitioner must provide evidence sufficient to rebut such a presumption. See Oppel, 851 F.2d at 38 (finding that it is appropriate to apply the presumption when petitioner did not introduce any evidence indicating that he was unaware that intent was an element of murder at the time he entered his plea).

In this case, the inconsistency of the intent elements of the two homicide offenses raises a serious question as to whether petitioner had the constitutionally-required understanding of the charges again him when he pled guilty to both. The court notes, however, that the type of plea to

---

[2] As petitioner points out, this question is somewhat ambiguous, because Judge Ruchelsman apparently referred to charge in the singular, when, in fact, there were two charges in the indictment.

which petitioner allocuted appears to be sanctioned by state law. New York law provides criminal defendants with a right to plead guilty to an entire indictment. N.Y. Crim. Proc. Law § 220.10[2], and New York courts may not accept a plea to less than the entire indictment without the consent of the government, see § 220.10[4]; People v. Bell, 245 A.D.2d 76, 77 (App. Div. 2d Dep't 1997). In addition, the court observes that New York courts, after accepting a guilty plea to an entire indictment, cannot dismiss inconsistent or lesser included counts, even if those courts would have been able to do so after a trial. See People v. Walton, 41 N.Y.2d 880, 880-81 (N.Y. 1977); People v. Thompson, 202 A.D.2d 456, 621 (App. Div. 2d Dep't 1994) (ruling that county court erred in dismissing an intentional murder count after defendant pled guilty to the entire indictment, which included three counts of murder in second degree—felony murder, intentional murder, and depraved indifference murder—after raping and killing one person). Under state law, sentences imposed for inconsistent or lesser included offenses must run concurrently, see N.Y. P.L. § 70.25[2]; People v. Bell, 50 A.D.2d at 576, as occurred here. The fact that the practice of pleading guilty to inconsistent offenses accords with state law, which also provides a partial remedy in the form of concurrent sentencing, suggests that petitioner's plea was not necessarily involuntary and may, instead, have been a rational calculation in the hope of leniency in sentencing.[3] Accordingly, the apparently unusual posture of this plea, in and of itself, does not necessarily indicate that petitioner's plea was not knowing, voluntary and intelligent within the meaning of federal law.

---

[3]Indeed, petitioner explains as much in an affidavit submitted to the state courts, where he states that trial counsel informed him "that if I were to plea to the indictment prior to the suppression hearings my chance of receiving less than the maximum would be better." (Nicholas 2/1/00 Aff. (submitted to App. Div. 2d Dep't) "Nicholas 2/1/00 Aff." ¶ 2.) Mr. Nicholas in fact pled guilty the day before the suppression hearing was scheduled. (See Plea Tr. 3, 7.)

Moreover, under New York law at the time of petitioner's plea, a reasonable jury could have found Mr. Nicholas to be guilty of either intentional or deliberate indifference murder based on the facts to which petitioner admitted at the plea allocution. State law now significantly restricts the instances in which the jury may be charged with deliberate indifference murder as an alternative to intentional murder. See People v. Feingold, 7 N.Y.3d 288 (2006). However, the New York Court of Appeals has recently clarified that the line of cases limiting the charge of deliberate indifference murder when the facts suggest the killing was intentional does not apply retroactively. See Policano v. Herbert, 7 N.Y.3d 588, 603 (2006). Therefore, under state law at the time of petitioner's plea, it appears that a jury could have found Mr. Nicholas guilty of either intentional murder or deliberate indifference murder for his act of choking the victim to death, depending on the jury's view of his mens rea at the time. See People v. Register, 60 N.Y.2d 270, 274 (N.Y. 1983) ("The crime [of deliberate indifference murder] differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct.") Thus, the facts to which Mr. Nicholas admitted do not tend to negate his guilt of one of the crimes to which he pled guilty, even if after trial a jury could not have found him to be guilty of both. Again, this suggests that the inconsistency of the mens rea of the two counts, taken alone, is not a sufficient reason to find that petitioner's plea was involuntary.

Even though Mr. Nicholas did not—and, in fact, could not have—admitted to a mental state that suggested his guilt of both homicide offenses, he is not constitutionally required to do so. "A plea of guilty and the ensuing conviction comprehend all the factual and legal elements necessary to sustain a binding final judgment of guilt and a lawful sentence." United States v.

11

Broce, 488 U.S. 563, 569 (1989); see also North Carolina v. Alford, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). While the precedent of this circuit suggests that factual basis inquiries may be warranted in particular circumstances, state courts are not generally required by the due process clause to inquire into the factual basis of guilty pleas. See Willbright v. Smith, 745 F.2d 779, 780 (2d Cir. 1984). Thus, although Mr. Nicholas' plea was to a legal fiction that would not have been a valid basis for a conviction after trial, failure to admit to facts establishing his mens rea does not render his plea involuntary in the constitutional sense.

The major stumbling block to petitioner's claim is his failure to provide any evidence that tends to show that he did not, in fact, understand the intent elements of the two homicide offenses. In state court proceedings and the instant petition, petitioner has made three factual allegations regarding lacunae in his understanding of the charges he faced: (1) he did not know that he could only be found guilty of one of the two charges after a trial (Nicholas 2/1/00 Aff. ¶¶ 4, 6); (2) he mistakenly believed that he could receive two consecutive sentences of twenty-five years to life imprisonment if he proceeded to trial (Pet. 13; Andrea Nicholas Aff. ¶ 3); and (3) he was unaware of any potential defenses to these charges, particularly the defense of extreme emotional disturbance (Nicholas 2/1/00 Aff. ¶ 5). For the purposes of deciding whether petitioner could amend his petition pursuant to Fed. R. Civ. P. 15(a) to include the claim that his guilty plea was not knowing, voluntary and intelligent, the court interpreted petitioner's discussion regarding the extreme emotional disturbance defense to raise the question of his understanding of the requisite state of mind. See Opinion and Order, Oct. 23, 2007. Upon

further scrutiny of petitioner's submissions in various state court proceedings and the instant petition, the court determines that petitioner has not, in fact, made factual claims suggesting that he did not understand the intent elements of the two offenses.

While petitioner has consistently indicated that he did not understand that the two counts would have to be presented to a jury in the alternative, his expressed concern was not that he did not understand the <u>mens rea</u> of the two offenses when he pled guilty. Rather, in state court proceedings, he premised his claim that his plea was not knowing, voluntary and intelligent on the ground that he did not accurately understand the sentence he faced at trial vis-à-vis a plea to the entire indictment. In particular, while his <u>pro se</u> supplemental brief on direct appeal cites to <u>Smith v. O'Grady</u>, 312 U.S. 329 (1941), for the proposition that a criminal defendant must receive notice of the true nature of the charges he faces, he asserts that "[d]efendant here, although advised of the statutory sections of the charges, was not informed of the true penalties of the charges."[4] (Def.'s Pro-Se Supplemental Brief (submitted to App. Div. 2d Dep't) at 11). This statement suggests that petitioner did have notice of the charges against him but may not have been properly informed about the sentence he could receive after trial. Therefore, the factual assertions by plaintiff concerning the inconsistency of the two offenses relate to his comparative sentencing exposure and not to the constitutional requirement articulated in <u>Henderson</u> and <u>O'Grady</u> that he understand the charges against him and their essential elements prior to entering a guilty plea.[5]

_____

[4]Petitioner's <u>pro se</u> brief on direct appeal also cites to <u>Henderson v. Morgan</u>, 426 U.S. 637, 647 (1976), but only for the premise that a guilty plea must be voluntary. (<u>See id.</u> at 8.)

[5]A defendant's misunderstanding of the potential sentence he faces at trial is not considered to be a basis for finding his plea to being involuntary. <u>See Brady v. United States</u>, 397 U.S. 742, 757 (1970) ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.")

While this may appear to be a subtle point, the court finds that the factual assertions at the core of petitioner's argument sufficiently distinguish the instant case from Henderson—the most closely analogous Supreme Court precedent—that the state court's determination that his guilty plea was knowing, voluntary, and intelligent is not contrary to, or an unreasonable application of, clearly established federal law. In Henderson, a 19-year old man who was "substantially below average intelligence" pled guilty to second-degree murder, a lesser-included offense of the first-degree murder charge in the indictment. 426 U.S. at 642. The second-degree murder charge did not appear in the indictment and there is no record of the charge or its elements being discussed at the plea allocution. See id. at 642-43. At sentencing, defense counsel told the court that his client had intended only to stop the victim from screaming and not to kill her. Id. at 643 n.11. The district judge found, after an evidentiary hearing, that petitioner was not notified prior to his guilty plea that an intent to cause the death of the victim was an essential element of the charge. Id. at 640. Moreover, the Supreme Court determined that, given Mr. Henderson's limited mental capacity, there was a potential basis for a manslaughter conviction. See id. Therefore, the facts of the case established that Mr. Henderson pled guilty to intentional murder without understanding that he had to intend to kill the victim to be guilty of that offense and continued to present a credible defense that he did not, in fact, have the requisite intent. Here, by contrast, Mr. Nicholas has never asserted that he did not understand the mens rea for either intentional murder or deliberate indifference murder, only that he did not know he could have only been convicted of one after a trial.

Petitioner has also indicated that he was unaware of potential defenses, namely, the affirmative defenses of extreme emotional disturbance and not guilty by reason of mental disease

14

or defect. However, as will be discussed below, see Section II(C)(3) supra, Mr. Nicholas has not presented any facts that suggest that these would have been credible defenses at a trial. Therefore, petitioner has provided no basis for suggesting that he may not have had the requisite mens rea to commit either of the two types of homicide charged. Moreover, even if an affirmative defense could—if proven—negate an element of the charge, "due process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense that he has committed." Mitchell v. Scully, 746 F.2d 951, 956 (2d Cir. 1984). Accordingly, failure of an attorney to advise his client about the existence of an affirmative defense does not render a guilty plea involuntary unless the failure to do so would constitute ineffective assistance of counsel, Panuccio v. Kelly, 927 F.2d 106, 111 (2d Cir. 1991), a claim that will be discussed below, see Section II(c)(3) supra.

Petitioner's brief points out that, depending on the circumstances, an individual who kills another person by choking them is not necessarily guilty of either intentional murder or reckless indifference murder. For example, as in Henderson, there may be circumstances that suggest manslaughter would be an appropriate charge. However, in this case, Mr. Nicholas' statements to the police, his statements before the court at the plea and sentencing, his submissions to the state courts on direct and collateral appeal and his pleadings relating to the instant petition do not indicate that he had a credible defense that he was not guilty of one of the two charges.

While the court is troubled by petitioner's allegation that he did not understand that he could only be convicted of one of the two counts if he had proceeded to trial, the state court's determination that his guilty plea was knowing, voluntary, and intelligent was neither contrary to, nor an unreasonable application of, clearly established federal law. The court acknowledges that,

15

if Mr. Nicholas' factual allegations are true, he pled guilty to a legal fiction without understanding that this is what he was doing. However, this set of factual circumstances alone does not render petitioner's plea involuntary under clearly established federal law as interpreted by the Supreme Court. While it would have been preferable for the state court to inquire further as to petitioner's understanding of the inconsistency of the charges to which he was pleading guilty, it does not appear that federal law, as interpreted by the Supreme Court, expressly imposes such an obligation. Accordingly, petitioner's claim is dismissed. As petitioner has not presented a set of facts that would entitle him to relief, petitioner's request for a hearing is denied. See Townsend v. Sain, 373 U.S. 293, 312 (1963). However, given the issues raised by petitioner's claim, the court finds that petitioner has made a substantial showing that he was denied a constitutional right, and, therefore, grants petitioner a certificate of appealability to the Second Circuit for this claim pursuant to 28 U.S.C. § 2253(c).

**B.**     *Validity of the Appeal Waiver*

Petitioner claims next that his access to the appellate courts was unconstitutionally impeded by an invalid waiver of his right to appeal. Petitioner argues that his waiver of appellate rights at his plea allocution was invalid because it was not a knowing and voluntary waiver of his right to appeal. In particular, petitioner contends that, because he was pleading guilty as of right to the entire indictment with no promises as to sentencing, the trial court unfairly extracted the waiver of appeal without a quid pro quo. On this basis, petitioner contends that the appeal waiver violated his due process rights under the Fourteenth Amendment.

16

States are not required by the Constitution to afford criminal defendants an avenue for appellate review of their convictions. Halpert v. Michigan, 545 U.S. 605, 610 (2005). However, when states do so, they must not make "unreasoned distinctions that can only impede open and equal access to the courts." North Carolina v. Pearce, 395 U.S. 711, 724 (1969). Petitioner contends that, in the context of a guilty plea to the entire indictment, requiring a petitioner to waive his appellate rights constitutes such an unreasoned distinction. The court finds that the state's court decision that petitioner's appeal waiver was valid and enforceable was not contrary to, nor an unreasonable application of, federal law.

The colloquy at petitioner's plea allocution reveals that he was reluctant to give up his right to appeal but agreed to do so after Judge Ruchelsman informed him that it was a requirement for the court to accept his plea. When Judge Ruchelsman asked "Do you . . . understand that by pleading guilty with the terms of this plea agreement that you will forfeit or waive or give up your right to appeal to a higher court . . . ?", petitioner replied "[y]es." (Plea Tr. at 14.) Petitioner also indicated, in response to questioning, that he had discussed the waiver of his right to appeal with his attorney and that he was not satisfied with these discussions but he understood them. (Id. at 13-14.) Judge Ruchelsman replied "Well, if you are not satisfied you don't have to go ahead with the plea. I just want you to understand." (Id. at 14). Petitioner's then stated that he was satisfied with the discussions with his lawyer and he understood them. (See id.) The following colloquy then took place:

> THE COURT: Do you understand by entering this plea bargain and waiving your right to appeal a higher court will not consider your appeal even in the event you later change your mind and decide to appeal anyway, do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Are you waiving your right to appeal of your own free will?

17

THE DEFENDANT: I would say yes and no. I don't know what to say. I say yes and no. I don't want to, but this is the best I can—this is the best chances [sic] I have.

THE COURT: Well, Mr. Nicholas, I understand what you're saying, Mr. Nicholas. The only way a court can accept your plea is if you're entering this plea at your own free will. If you're telling me you're not entering it at your own free will, I cannot accept your plea.

THE DEFENDANT: Yes.

THE COURT: Are you waiving your right to appeal of your own free will?

THE DEFENDANT: Yes.

In addition to waiving his right to appeal orally, petitioner and defense counsel also signed a "Waiver of Right to Appeal" form.

A waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458 (1938). Here, the state court informed petitioner of his right to appeal. However, in so doing, the state court did not make entirely clear that petitioner was being asked to waive that right as opposed to automatically forfeiting it as a condition of pleading guilty. The New York Court of Appeals has recently held that a waiver of appeal is invalid "[w]hen a trial court characterizes an appeal as one of the many rights automatically extinguished upon entry of a guilty plea." People v. Lopez, 6 N.Y.3d 248, 256 (N.Y. 2006). In so ruling, that court emphasized that "[w]hen a trial court inaccurately employs the language of forfeiture in a situation of waiver, it has mischaracterized the nature of the right a defendant was being asked to cede." Id. Applying that reasoning to the circumstances of this case, it appears as though petitioner's waiver of his right to appeal may be invalid as a matter of state law. However, even if this were true, federal habeas relief is not available to redress errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67 (1991). While the court finds the New York Court of Appeal's reasoning in Lopez to be a persuasive interpretation of the meaning of waiver under federal law, petitioner has not pointed to any Supreme Court precedent that

18

addresses this issue or any rights under the federal constitution that petitioner was being asked to waive. Moreover, petitioner has not shown that the state court's failure to make perfectly clear that petitioner was being asked to waive his right to appeal constitutes the type of unreasoned distinction the Supreme Court has held to violate the Fourteenth Amendment.

The next issue is whether the state court's insistence that petitioner waive his appellate rights as a condition of pleading guilty to the indictment rendered the waiver invalid under federal law. For criminal defendants who plead guilty at the federal level, a waiver of the right to appeal pursuant to a plea agreement is generally enforceable in this circuit so long as it is knowing and voluntary. See United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999). The underlying rationale for courts' willingness to enforce such waivers is that plea agreements are construed as contracts, as they are bargained-for exchanges, and waiver of the right to appeal is considered to be a potential bargaining chip for criminal defendants. See United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995). Here, there did not appear to be a bargained-for-exchange, as petitioner exercised his statutory right under state law to plead guilty to the entire indictment and did not receive any promises as to sentencing.[6] Of course, as discussed above, see supra n.3, petitioner hoped that pleading guilty prior to the suppression hearing might result in a lesser sentence than he would receive after a trial, but he was not promised such an outcome. Regardless, however, petitioner

---

[6] The court notes that the New York Appellate Division, Third Department, has held that such circumstances rendered an appeal waiver involuntary and, therefore, invalid. See People v. Coles, 13 A.D.3d 665, (App. Div. 3d Dep't 2004) ("Defendant exercised his statutory right to plead guilty to the entire indictment (see C.P.L. 220.10[2]), without any promise from either County Court or the prosecutor respecting sentencing. Under these circumstances, it was improper for the court to require defendant to waive his right to appeal.")

has failed to point to any Supreme Court precedent that requires an appeal waiver to be a bargained-for-exchange in order to be valid under federal law.

Lastly, petitioner points out that the written waiver form that he signed was confusing and unclear. The portion of the waiver signed by petitioner reads:

> I hereby waive my right to appeal. I execute this waiver after being advised by the court and my attorney of the rights I am giving up. I have been advised of my right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person and to have an attorney assigned in the event that I am indigent, and to submit a brief and/or argue before an appellate court on any issues relating to my conviction and sentence other than that the sentence on a negotiated plea was harsh or excessive. I make this waiver voluntarily, knowingly, and of my own free will.

(See Resp't Ex. A.) As petitioner points out, state courts have determined that waivers containing this language are invalid, because they incorrectly inform criminal defendants that the right to an appeal does not include the right to challenge the sentence or a negotiated plea on the ground that it is excessive. See People v. Rolon, 632 N.Y.S.2d 208, 209 (App. Div. 2d Dep't 1995); see also People v. Sheppard, 813 N.Y.S.2d 911, 911 (App. Div. 2d Dep't 2006). Here, in enforcing petitioner's waiver of appellate rights, the Appellate Division relied only on the plea colloquy and not the written waiver. See People v. Nicholas, No. 1998-03439 (App. Div. 2d Dep't Apr. 26, 2000). Though the form may be confusing and invalid under state law, these are insufficient grounds for the court to grant habeas relief.

For these reasons, while petitioner's argument that the appeal waiver was invalid may have some basis in New York law, petitioner has not demonstrated that the enforcement of the waiver denied him of any rights under the federal Constitution. Consequently, the state court's enforcement of the appeal waiver was not contrary to, nor an unreasonable application of, clearly established federal law, and petitioner's claim is dismissed.

## C.    *Ineffective Assistance of Counsel*

Petitioner brings a claim of ineffective assistance of counsel on three grounds. He argues that his trial counsel was ineffective for (1) failing to adequately advise his client regarding pleading guilty to the indictment and his relative sentencing exposure should he proceed to trial; (2) failing to intervene when his client waived his appellate rights without receiving any benefit; and (3) failing to investigate or advise him regarding the availability of the affirmative defense of extreme emotional disturbance or a plea of not responsible by reason of mental disease or defect.

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one.[7] See id. at 697. When a federal court is reviewing state court decisions denying ineffective assistance

---

[7] In respondent's memorandum of law in opposition to the amended petition, respondent included a footnote "reasserting" respondent's argument that petitioner's ineffective assistance of counsel claim was in part procedurally barred and referring the court to respondent's September 30, 2005 memorandum of law. (See Resp't 2/9/07 Mem. at 39 n.9) However, the referenced page numbers for the earlier memorandum pertain to petitioner's sentencing claim and not his ineffective assistance of counsel claim. (See Resp't 9/30/05 Mem. at 2-6). In the subsequent section of the earlier memorandum, respondent asserts that petitioner's ineffective assistance of counsel claim was not fully exhausted because he had not argued on direct appeal or in his first § 440 motion that trial counsel was ineffective for failing to negotiate a plea of not responsible by reason of mental disease or defect. (See id. at 6-7.) Petitioner's petition was subsequently stayed to allow him to raise this claim via a second § 440 motion; therefore, this argument is now moot. The remainder of respondent's earlier brief addresses petitioner's habeas petition on the merits. Therefore, as respondent has failed to provide any basis for arguing that petitioner's ineffective assistance of counsel claim is procedurally barred, the court finds that this defense has been waived. See Trest v. Cain, 522 U.S. 87, 89 (1997). Accordingly, the court reviews this claim on the merits. As each of the grounds for petitioner's ineffective assistance of counsel claim were addressed on the merits by the state courts, the court applies the deferential review mandated by AEDPA.

of counsel claims on the merits, AEDPA requires a petitioner to show that the state court's decision was contrary to the <u>Strickland</u> test, <u>see</u> <u>Eve v. Senkowski</u>, 321 F.3d 110, 123 (2d Cir. 2003), or that the state court "'applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.'" <u>See</u> <u>id</u>. at 124 (2d Cir. 2003) (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002)).

**1.     Inadequate Advice Regarding Pleading Guilty to the Entire Indictment**

Petitioner contends that his trial counsel was ineffective for failing to advise him concerning whether he should plead guilty to the entire indictment. In particular, petitioner claims that his trial counsel never informed him that he could not be convicted of both offenses after a trial and, instead, inaccurately informed him that he faced two consecutive sentences if he proceeded to trial.

The court does not need to reach the question of whether any conduct by counsel in this regard was deficient, because, even if petitioner's representations are true, the court finds that petitioner has failed to allege sufficient prejudice to establish ineffective assistance of counsel. In the context of a guilty plea, satisfying the second prong of the <u>Strickland</u> test requires petitioner to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Petitioner has failed to put forward any convincing evidence to show there was a reasonable probability that, had he been differently advised regarding pleading guilty to the indictment or the sentence he faced at trial, he would not have pleaded guilty and instead proceeded to trial.

In his habeas petition, petitioner makes the unsworn assertion that "Petitioner would have never pleaded guilty to this crime, if petitioner had been made to understand that he faced the same amount of time, despite having been convicted after excising [sic] his constitutional right to a jury trial." The petitioner's statement alone is insufficient evidence. See Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991) ("It is worth noting that [the prejudice] prong of the inquiry is not merely satisfied by [the petitioner's] testimony that he would have gone to trial had he known of the defense, as [the petitioner] in effect argues, since a defendant's testimony after the fact suffers from obvious credibility problems.") (internal quotation marks and citations omitted); see also United States v. Arteca, 411 F.3d 315, 322 (2d Cir. 2005).

Moreover, the evidence in the record contradicts petitioner's assertion that, had he been better informed about the fact that he faced the same sentence if he went to trial, he would not have pled guilty. Petitioner confessed to the police orally and in writing that he killed the victim and, although he pled guilty prior to challenging the use of these statements in a suppression hearing, has not denied that he committed this act. (See, e.g., Pet. at 22 (acknowledging that his crime was "unquestionably terrible").) In the affidavit submitted by petitioner on his direct appeal, he stated that he was informed by his attorney that a plea of guilty to the indictment prior to the suppression hearing would improve his chances of receiving less than the maximum sentence. (Nicholas 2/1/00 Aff. ¶ 3.) This statement suggests that petitioner was motivated to plead guilty, at least in part, by the prospect that he might receive a penalty below the maximum sentence. Even if counsel had informed petitioner that he faced the same maximum sentence upon a guilty plea to the indictment or a trial, the chance that a plea would result in more lenient sentencing would still favor the option of pleading guilty over proceeding to trial.

In addition, the record suggests that petitioner felt remorse over his act and desired punishment. His defense attorney represented to the state court at sentencing that Mr. Nicholas "wanted this to be over as soon as possible, and that's one of the reasons why he pled in this case. He wants to be punished." (Sentencing Tr. at 7.) This is also consistent with a statement made by the victim's mother at sentencing who testified that she had received a call from petitioner after his arrest admitting that he killed her daughter, telling her that he was sorry, and stating that he had to pay for this act.[8] (Id. at 3.) These statements indicate that petitioner accepted that he would be punished for killing the victim and, even if he had understood that he faced the same maximum sentence after a plea or trial, he still would have pled guilty.

Petitioner also makes the argument that counsel should have protested when the court allowed his client to plead guilty to inconsistent offenses and, accordingly, petitioner was prejudiced by the conviction on two counts as opposed to one. However, he has not shown that he had any other option besides pleading guilty to the entire indictment or going to trial. As discussed above, the prosecutor stated that the government was not making a plea offer, and the state court judge had no authority to accept a plea to less than the indictment. Petitioner contends that further investigation by counsel into the inconsistency of the two charges or affirmative defenses might have persuaded the prosecutor to negotiate a plea bargain, but this is purely speculative. Given that the prosecutor's refusal to offer a plea deal was based on the family's desire to seek the maximum punishment, petitioner has not shown that petitioner would have been likely to receive such a deal and is thereby prejudiced.

---

[8] In recounting this conversation in his habeas petition, petitioner states "the petitioner's sentiments appear to show genuine remorse for the pain inflicted upon a family with which he had been intimately involved." (Pet. at 23.)

Consequently, the state court's rejection of petitioner's ineffective assistance of counsel claim on this ground was not contrary to or an unreasonable application of the Strickland analysis.

### 2. Failure to Object to the Appeal Waiver

Petitioner additionally contends that his counsel was ineffective for allowing petitioner to waive his right to appeal.[9] He critiques trial counsel for failing to object—or say anything at all—when the state court conditioned its acceptance of petitioner's plea on a waiver of appellate rights, notwithstanding petitioner's clear reluctance to do so and his right under state law to plead guilty to the entire indictment. Petitioner further points out that trial counsel attested to the appeal waiver by signing a form that, as discussed above, see Section II(B) supra, is confusing and had been ruled invalid by state courts at the time of his plea. Petitioner argues that he was prejudiced by counsel's deficient behavior in this regard because the Appellate Division relied on

---

[9]On April 2, 2007, the court ordered supplemental briefing on the question of whether this claim was exhausted and, if not, whether it was procedurally barred. By order April 18, 2007, the court vacated the briefing schedule after it came to the court's attention that a page was missing from the state court record filed with the court. Upon review of the brief submitted by petitioner's counsel on direct appeal in its entirety, the court concluded that petitioner had fairly presented the instant claim to the state courts as required to exhaust state law remedies. See Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982). By letter dated April 19, 2007, respondent moved the court to reconsider this determination. Respondent acknowledges that the claim of ineffective assistance of counsel on the basis of the appeal waiver was a subsidiary part of petitioner's challenge to the waiver. However, respondent points out that this claim was made separately from the ineffective assistance of counsel claims with respect to the plea and affirmative defenses made in a pro se supplemental brief on direct appeal. Respondent argues that the desired remedies in the two briefs were different: the brief filed by counsel sought to invalidate the appeal waiver so that petitioner's sentence could be reviewed, while the pro se brief sought to vacate the plea. On this basis, respondent argues that petitioner's cumulative claim of ineffective assistance of counsel has not been exhausted. The court disagrees. The court finds that the manner in which petitioner raised the instant claim before the Appellate Division satisfied his obligation to "inform[] the state court of both the factual and the legal premises of the claim he asserts in federal court." See Daye, 696 F.2d at 191. Though the remedies sought may have been different, the court finds that the state court was given a sufficient opportunity to this grounds for petitioner's ineffective assistance of counsel claim and, accordingly, that this court may review it on the merits under the deferential standard mandated by AEDPA.

the appeal waiver to deny review of his sentence and his claim of ineffective assistance of counsel on the ground that he was not advised of potential affirmative defenses.[10]

In analyzing a claim that counsel's performance fell short of constitutional standards, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689. In order to demonstrate ineffective assistance of counsel, petitioner must overcome the presumption that the challenged actions might be sound trial strategy. Cuevas v. Henderson, 801 F.2d 586, 589-90 (2d Cir. 1986). As explained by the Supreme Court,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Id. at 690-91. Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690).

Here, the strategy articulated by petitioner's trial counsel for his client's plea was that pleading guilty to the entire indictment prior to the suppression hearing would improve petitioner's chances for leniency in sentencing. (Nicholas 2/1/00 Aff. ¶ 3.) Therefore, the

---

[10]The Appellate Division made clear that the appeal waiver did not bar review of petitioner's claim of ineffective assistance of counsel "to the extent that it may have affected the voluntariness of the plea." The court also agrees with petitioner's argument that, given petitioner's contention on direct appeal that trial counsel was ineffective for allowing petitioner to waive his right to appeal, the Appellate Division's determination that petitioner's appeal waiver was knowing and voluntary necessarily encompassed a finding that counsel was not ineffective on this basis. (See Pet'r 4/12/07 Ltr. (citing People v. Callahan, 80 N.Y.2d 272, 283 (N.Y. 1992); People v. Hidalgo, 91 N.Y.2d 733, 735 (N.Y. 1998).) Thus, the only ineffective assistance of counsel claim not reviewed on the merits by the Appellate Division due to the appeal waiver was petitioner's argument in his pro se supplemental brief that trial counsel failed to inform him regarding affirmative defenses. The court observes that petitioner subsequently argued this point in his two § 440 motions.

effectiveness of this strategy rested entirely on the trial judge's exercise of his discretionary authority in sentencing. While state law provides criminal defendants with a right to plead guilty to the entire indictment, the trial judge made clear that he would not accept petitioner's guilty plea unless he waived his right to appeal. (See Plea Tr. at 15-16.) Petitioner argues that trial counsel should have objected to this "unfair and inherently coercive" announcement by the trial judge. (See Pet'r Reply at 17.) However, even with regard to pleas to the entire indictment, state trial judges retain some discretion to refuse to accept a guilty plea. See Schroedel v. La Buda, 264 A.D.2d 136, 138 (N.Y. App. Div. 3d Dep't 2000) (refusing to grant mandamus to compel a county court to accept a guilty plea to the entire indictment, noting that acceptance of a plea is discretionary); cf. People v. Rosebuck, 109 A.D.2d 915, 916 (N.Y. App. Div. 3d Dep't 1985) (remanding county court's rejection of a guilty plea to the entire indictment for failing to explain why accepting the plea would be inappropriate). Therefore, objecting to the appeal waiver stood to jeopardize Judge Ruchelsman's acceptance of petitioner's plea and, even if he ultimately accepted the plea, could have diminished the likelihood that he would sentence the petitioner to less than the maximum. Allowing petitioner to go forward with the appeal waiver without objecting was therefore consistent with trial counsel's identified strategy. Consequently, it was not objectively unreasonable for the state court to find that trial counsel's actions under these circumstances fell within the range of professionally competent assistance.

### 3. Failure to Investigate or Advise of Affirmative Defenses or Alternate Pleas

Petitioner further claims that his trial counsel was ineffective for failing to advise him regarding the affirmative defense of extreme emotional disturbance or a plea or defense of not guilty by reason of mental disease or defect. Petitioner argues that counsel should have been put

27

on notice of the need to investigate the possibility of such defenses or plea by petitioner's inability to explain why he killed the victim other than stating that he "flipped out." Petitioner requests the appointment of a psychiatrist to evaluate him.

Determining whether an attorney's failure to advise a defendant regarding the availability of an affirmative defense constituted ineffective assistance of counsel requires an evaluation of the likelihood that the defense would have been successful at trial. Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991). This evaluation is relevant for both prongs of the Strickland test for ineffective assistance of counsel. First, the likely merit of the defense is a significant factor in determining whether the attorney acted competently when he did not disclose the existence of the defense to his client. Panuccio, 927 F.2d at 109. Second, it is significant in evaluating whether there was a reasonable probability that the petitioner would have insisted on going to trial had he known about the defense. Id.

The court finds that petitioner has failed to show a sufficient likelihood that the extreme emotional disturbance defense would have been successful at trial. As an affirmative defense to intentional second-degree murder,[11] New York law requires the defendant to prove that he:

> acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

N.Y. Penal Law § 125.25(1)(a). The only potential explanation or excuse offered by petitioner in the record before the court is that he had a fight with his girlfriend the day before and the victim—his girlfriend's sister—asked him to leave the apartment. It is extremely unlikely that

---

[11] This defense is not available for the charge of depraved indifference murder.

28

petitioner would have been able to satisfy his burden of showing this was a "reasonable explanation or excuse" for an extreme emotional disturbance. Petitioner himself characterizes his behavior that day as "irrational." (Pet. 16.) Moreover, the petitioner's actions immediately after he killed the victim—hiding the victim's body and pretending to help her family look for her—do not suggest the requisite loss of control. See People v. Roche, 98 N.Y.2d 70, 77 (N.Y. 2002) (holding that a defendant who stabbed his common law wife was not entitled to a jury charge on the defense of extreme emotional disturbance after he stabbed his common law wife, citing, among other reasons, defendant's behavior, including providing a false explanation to the neighbors for his wife's death and removing items from the apartment to prevent the police discovering them). Because petitioner has not shown this defense to be a viable one at trial, petitioner has failed to demonstrate that his trial counsel was incompetent for failing to explain it or that he suffered any prejudice as a result of his ignorance of the defense.

Petitioner's claim that his trial counsel was ineffective for failing to pursue a defense or plea of not guilty by reason of mental disease or defect similarly fails. Proving such a defense at trial requires that the defendant show that

> at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:
> 1. The nature and consequences of such conduct; or
> 2. That such conduct was wrong.

N.Y. Penal Law § 40.15. In New York, a plea of not responsible by reason of mental disease or defect requires the consent of the court and the prosecution. N.Y. Crim. Proc. Law § 220.15(1). Moreover, in order to accept such a plea, the New York court must be satisfied that the defendant could prove at trial the defendant's lack of responsibility by reason of the mental disease or defect by a preponderance of evidence. People v. Washington, 229 A.D.2d 726, 728 (N.Y. App.

29

Div. 2d Dep't 1996). Petitioner has not pointed to any evidence in the record that would substantiate such a defense. Petitioner's assertion that his inability to adequately explain the motivations for his actions should have suggested this was a viable defense fall far short of the evidence needed to raise an ineffective assistance of counsel claim. There is no basis in the record before the court to find that his counsel acted outside the accepted range of competence for failing to investigate the possibility of such a defense or plea or explain it to petitioner and no ground for finding that petitioner was prejudiced by any omission in this regard.

For these reasons, the court finds that the state court's rejection of petitioner's ineffective assistance of counsel claim on this basis was not contrary to, or an unreasonable application of, clearly established federal law. Petitioner has also failed to justify his application for the appointment of a psychiatrist and, accordingly, this request is denied.

### 4. Petitioner's Cumulative Ineffective Assistance of Counsel Claim

Moreover, even if trial counsel's alleged errors are viewed cumulatively, Mr. Nicholas has failed to demonstrate that the state courts unreasonably applied federal law in determining that trial counsel's representation was not constitutionally defective. As discussed above, petitioner has failed to establish that he was materially prejudiced by any failure by counsel to adequately advise him on his guilty plea or investigate potential affirmative defenses. Even when these omissions are viewed in conjunction with trial counsel's failure to object to the appellate waiver, there is no demonstrated likelihood that petitioner would have forgone pleading guilty in favor of proceeding to trial.

The only potential manner in which petitioner may have been prejudiced by counsel's omissions relates to the denial of appellate review for claims other than those related to the

voluntariness of the plea and the waiver. See Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000) (holding that the forfeiture of an appellate proceeding constitutes prejudice under Strickland). Therefore, only those deficiencies that contributed to the appeal waiver could potentially satisfy the Strickland test. See id. at 484 ("[C]ounsel's deficient performance must actually cause the forfeiture of defendant's appeal."); see also Strickland, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). The court has already determined that counsel's failure to object to the trial court's insistence that petitioner waive his appellate rights was not unreasonable. Consequently, habeas relief is not warranted on petitioner's ineffective assistance of counsel claim.

**D.    *Excessiveness of the Sentence***

Petitioner's final claim, brought only in his pro se petition, that his sentence was excessive is likewise dismissed. A federal court may not review a federal question on habeas review if the state court's "decision rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citations and internal quotation marks omitted). Here, the state court predicated its dismissal of petitioner's excessive sentence claim on his waiver of his right to appeal. People v. Nicholas, No. 1998-03439 (N.Y. App. Div. 2d Dep't, Apr. 26, 2000) (citing People v. Hidalgo, 91 N.Y.2d 733, 735 (N.Y. 1998)). Under state law, a knowing and voluntary waiver of the right to appeal precludes appellate consideration of whether the sentence was harsh or excessive. People v. Hidalgo, 91 N.Y.2d 733, 735 (N.Y. 1998). However, as discussed above, see Section II(b) supra, petitioner has raised questions about whether petitioner

31

validly waived his appellate rights under state law. Therefore, it is possible that the procedural bar asserted by respondent is not an adequate state law ground. Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) ("a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed by the state in question.") (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

The court does not need to resolve this question, because petitioner's claim is meritless. "[I]t is well established that no constitutional issue is presented for habeas corpus relief where a sentence imposed falls within the range prescribed by state statutory law." Alvarez v. Scully, 833 F.Supp. 1000, 1003 (S.D.N.Y. 1993); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir.1992). Petitioner's sentence for each offense was within the statutory range, see N.Y. Penal L. §§ 125.25 (second-degree murder is a class A-I felony); 70.00(2)(a) (maximum sentence for a class A felony is life imprisonment); 70.00(3)(a)(i) (minimum sentence is between fifteen to twenty-five years). In addition, petitioner was sentenced concurrently as required by New York law, see N.Y. Penal L. § 70.25. Therefore, petitioner has no federal constitutional claim that his sentence was excessive and this claim is accordingly dismissed.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. The court grants a certificate of appealability under 28 U.S.C. § 2253(c) with respect to petitioner's claim that his guilty plea was not knowing, voluntary and intelligent. No certificate of appealability is granted with respect to any of the petitioner's remaining claims, since he failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right

to seek a certificate of appealability from the United States Court of Appeals for the Second

Circuit for these claims. <u>See</u> 28 U.S.C. § 2253.

        SO ORDERED.


                              _____
                              Allyne R. Ross
                              United States District Judge

Dated: April 20, 2007
       Brooklyn, New York

**Service List:**

**Petitioner's Attorney:**
Jane Simkin Smith
P.O. Box 1277
Millbrook, NY 12545

**Respondent's Attorney:**
Camille O'Hara Gillespie
Kings County District Attorneys Office
350 Jay Street, Renaissance Plaza
Brooklyn, NY 11201

cc:     Magistrate Judge Lois Bloom